FILED

2017 AUG 15 PM 2: 32

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

IN THE UNITED STATES
DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 6:14-cr-00033-JA-KRS-1

UNITED STATES OF AMERICA

V.

JONATHAN TYLER PRIVE

MOVANT'S BRIEF IN SUPPORT OF MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. §2255

Jonathan T. Prive
#337795
Brevard County Jail Complex
860 Camp Road
Cocoa, FL 32927

FILED

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA 2017 AUG 15 PM 2:32

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.                                    CASE No. 6:14-cr-00033-JA-KRS-1

JONATHAN TYLER PRIVE


## BRIEF IN SUPPORT OF MOTION


The Defendant, Jonathan Prive, *pro se*, hereby submits a brief in support of his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255, and while reserving all arguments not asserted herein, states the following in support thereof:

### I. Introduction

On August 26, 2014, the Defendant entered into a plea agreement with the United States (Doc. 27) in which he agreed to plead guilty to Count Two of the indictment pending against him in the above captioned case in exchange for, *inter alia*, the dismissal of Count One, no additional charges being filed related to the conduct which gave rise to the indictment, and a recommendation for a three-level reduction in the offense level under U.S.S.G. §3E1.1 for acceptance of responsibility. In entering into the agreement, the Defendant was led to believe by counsel that, as the plea agreement contained no comprehensive waiver of the right to appeal the conviction, he was reserving that right to appeal to a higher court. On August 27, 2014, the Defendant appeared before United States Magistrate Judge Karla R. Spaulding, and after a change of plea colloquy the Defendant pled guilty to Count Two of the indictment in connection with the plea agreement. Doc. 28.

On or about September 18, 2014, the Defendant read a newspaper article in The Orlando Sentinel, detailing a series of SWAT-style raids on barbershops in

Orlando, Florida, and other locations in central Florida. The article stated that the 11th Circuit had previously held that law enforcement officers were not granted immunity from the law while performing their official duties, and the Defendant thought this significant because his appointed counsel had induced him to plead guilty based in significant part on the premise that he could not raise any defense based on illegal acts by law enforcement officers in the case, due to the claim by counsel that they were granted immunity from all state laws by virtue of being part of a joint state and federal task force.

After learning he had been induced to plead guilty under false pretenses, the Defendant proceeded to petition the court to appoint new counsel. On November 3, 2014, Daniel Brodersen was appointed to replace Jose Rodrigues, and the Defendant began working on a motion to withdraw plea. On December 9, 2014, the Defendant, through counsel, filed a verified motion to withdraw plea of guilty (Doc. 48).

Over objections by the United States, Magistrate Judge Karla Spaulding issued a Report and Recommendation (Doc. 55) recommending that the Defendant's motion be granted, and that he be allowed to withdraw his plea and continue to trial. The United States objected to the Report and Recommendation, and District Court Judge John Antoon, II, held an evidentiary hearing on the matter on January 22, 2015. The District Court Judge thereafter denied the motion on February 5, 2015 (Doc. 67), and the case proceeded to sentencing.

On April 15, 2015, a sentencing hearing was held before Judge John Antoon, II, in District Court. During that hearing, due to a conflict with his appointed counsel, the Defendant was allowed to file a pro se motion to terminate proceedings and vacate sentence, pursuant to Fed. R. Crim. P. 12(b)(3)(B), in open court. The Defendant alleged that there was a jurisdictional defect in the original indictment because 18 U.S.C §2422(b) is unconstitutional, thus failing to charge a valid offense. Doc. 90. The sentencing judge heard the motion, and

after consideration ruled it was without merit, denying it without elaborating. Sentencing was continued until April 22, 2015, and the Defendant was eventually sentenced to 365 months imprisonment, without time served, followed by lifetime probation with special conditions.

Daniel Brodersen was allowed to remain as counsel for the Defendant on appeal based on the understanding that he would raise several issues on the Defendant's behalf in the direct appeal. Mr. Brodersen filed notice of appeal (Doc. 101) and the case was assigned case no. 15-12032 on May 12, 2015. Mr. Brodersen then cut off all communication with the Defendant and filed an Anders Brief with motion to withdraw as counsel on August 10, 2015. The Defendant filed a 52 page response with incorporated motion to withdraw counsel and appoint new counsel, which was filed by the Clerk on January 4, 2016. On May 24, 2016, the motion to withdraw pursuant to *Anders* was granted, and the conviction and sentence were per curiam affirmed. The Defendant then proceeded *pro se* and filed a timely petition for rehearing *en banc* on June 24, 2016. The petition was denied on July 28, 2016, and the conviction and sentence again affirmed per curiam by the Court's mandate, on August 10, 2016.

The Defendant now seeks to vacate, set aside, or correct the sentence imposed by the United States District Court with a motion pursuant to 28 U.S.C. §2255, and submits this brief therewith.


II. Memorandum of Law

A prisoner in custody pursuant to a sentence imposed by a federal court may move the court which originally imposed the sentence to vacate, set aside, or correct the sentence on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the conviction and sentence are otherwise subject to collateral attack. 28 U.S.C. §2255(a).

The Defendant has filed a motion under §2255 contemporaneous with this brief, in which he raises nineteen (19) grounds which meet the requirements of §2255(a). The Defendant believes that some of these grounds for relief require further clarification, or argues those grounds herein, pursuant to local court instructions for filing a motion under 28 U.S.C. §2255.

A. Ground One

As Ground One for the §2255 motion, the Defendant asserts that 18 U.S.C. §2422(b), under which he was convicted and sentenced, is facially invalid under the First Amendment of the Constitution because it is substantially overbroad.

18 U.S.C. §2422(b) reads:

"Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life."

The statute does not provide any indication of whether it applies to only intrastate conduct or if it intends to target only interstate activity. It can therefore be read to authorize any instance of persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity, regardless of whether it is purely local or interstate in nature. See United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032 (1997) (refusing to read a limitation into a federal statute where "[t]here is no basis in the text" to do so). According to the statute's plain language, the only jurisdictional element that need be satisfied is that a person use "the mail or any facility or means of interstate or foreign commerce," or that the persuasion take place "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. §2422(b).

It has often been argued that §2422(b) is a valid exercise of Congress's

power to regulate the internet, or the instrumentalities of interstate commerce, but this idea utterly disregards the obvious fact that §2422(b) never mention either the internet or instrumentalities of interstate commerce anywhere in the statute. The 11th Circuit has often tried to uphold the statute's constitutionality under the Commerce Clause by reciting the maxim that "the internet is an instrumentality of interstate commerce" and "Congress has the power to regulate the internet." See, e.g., *United States v. Hornaday*, 329 F.3d 1306. Indeed, the 11th Circuit tends to examine §2422(b) as *only* a regulation of the internet or instrumentalities of commerce. Any time there is a Commerce Clause challenge to the statute's constitutionality, this is the reasoning relied on to uphold it. See *United States v. Schumaker*, 479 Fed. Appx. 878 (2012).

The problem with that reasoning is that this is *not* what §2422(b) actually says. In fact, during the sentencing hearing which took place on April 15th, 2015, Andrew Searle, arguing on behalf of the U.S. Attorney, sought a sentencing enhancement for use of a computer by specifically claiming §2422(b) does not require the use of a computer or the internet at all. (see transcript of proceedings, Docs. 89 and 120, page 13, lines 2-13). Mr. Searle said: "It just so happens to be in this particular case that that was the actual instrumentality of interstate commerce that the defendant elected to use..." *Ibid*. Judge Antoon then ruled that the government was correct (*id.*, at page 14, lines 4-7), and later reiterated this finding during the continuation of sentencing on April 22, 2015, saying: "...the objection generally was that the crime required some interstate component, but that interstate component could be much broader than the use of a computer. It could be use of mail or interstate road transportation or any variety of ways other than a computer..." Transcript of proceedings, Docs. 95 and 114, page 8, lines 6-10.

This ruling by Judge Antoon reflects the reality of §2422(b). The jurisdictional element that controls the statute in a Commerce Clause context is the overly broad phrase "using... any facility or means of interstate or foreign commerce." Undoubtedly the internet, a computer, or a number of other instrumentalities of

interstate commerce could fit into the class of things which constitute either a "facility" or a "means" of interstate commerce, but the jurisdictional element is infinitely broader than that. The plain text covers the use of any facility, or any means of interstate or foreign commerce, and it is these plain terms that must be judged as to their constitutionality.

Congress's use of the word "any" suggests that they intended the statute's reach to be broad. See *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032 ("Read naturally, the word 'any' has an expansive meaning."). The internet or instrumentalities of interstate commerce can satisfy the definition of a "means" of interstate commerce, but so do all *other* forms of communication. The human voice is arguably the greatest "means of interstate or foreign commerce" in the world, easily satisfying the jurisdictional element of §2422(b). Black's Law Dictionary defines a 'means' as: "1. Available resources, esp. for the payment of debt; income." and "2. Something that helps attain an end." Black's Law Dictionary, 10th edition, 2014. It is beyond question that the human voice, or any form of communication for that matter, are "any... means of interstate or foreign commerce." The jurisdictional element only modifies the specific activity which Congress sought to criminalize, however. §2422(b) seeks to prohibit the persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity, and because there is virtually no way to do so without some form of speech or communication, §2422(b) is applicable to nearly every single act of persuasion, inducement, enticement, or coercion of a minor, short of outright physical assault and rape.

Because §2422(b) is a statute which regulates expression based on content, it is "'presumptively invalid'... and the Government bears the burden to rebut that presumption." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 817, 120 S.Ct. 1878 (2000). Its ability to cover *all* forms of communication stretches the net of §2422(b)'s coverage far beyond just the use of the internet or computers, and its reach becomes even more pervasive when the second half of the statute is brought into play.

The second major part of §2422(b) is the part which reads, in relevant part: "Whoever... persuades, induces, entices, or coerces" anyone under 18 "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense..." 18 U.S.C. §2422(b) (emphasis added). It is this half of the statute that proves truly fatal to §2422(b) by rendering it overbroad, and when combined with the all-inclusive 'facility or means' makes it truly limitless.

In the First Amendment context, a law may be invalidated as overbroad if "a 'substantial number' of its applications are unconstitutional, judged in relation to its plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473, 130 S.Ct. 1577 (2010). This is "a second type of facial challenge" recognized by the *Stevens* court, and is different from a typical facial challenge, which would otherwise require the Defendant to establish that "no set of circumstances exists under which [the statute] would be valid," *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987), or that the statute lacks any "plainly legitimate sweep." *Washington v. Glucksberg*, 521 U.S. 702, 740, n. 7, 117 S.Ct. 2258 (1997) (internal quotation marks omitted). It is this "second type of facial challenge" which the Defendant brings against §2422(b), for overbreadth.

§2422(b) becomes applicable to nearly every sex offense against or involving a minor by using the jurisdictional hook "any facility or means," but with the second half of the statute we again see Congress's use of the word "any" in the text of "... any sexual activity for which any person can be charged with a criminal offense..." 18 U.S.C. §2422(b) (emphasis added). This has been used by federal courts to establish that even misdemeanor offenses are enough to satisfy the requirement that any person can be charged with a criminal offense. See, e.g., *United States v. Shill*, 740 F.3d 1347, 1352 (2014) ("Because Congress failed to limit §2422(b) in this way, the logical inference is that Congress intended the statute to apply to both felony and misdemeanor conduct."); *cf., United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032 (refusing to read a limitation into a federal statute where "[t]here is no basis in the text" to do so).

The Defendant's main argument concerning this second half centers around the portion of that phrase which says "... for which any person can be charged with a criminal offense..." As we've established, the Supreme Court holds "any" to be expansive. Gonzales, ibid. Congress presumably wrote this into §2422(b) because the statute was intended to reach offenses that crossed state lines, necessitating a highly flexible standard of conduct in order to target activity which might be unlawful in one jurisdiction, but not another. This also allows the government to reach third parties who might otherwise not be able to be charged, such as a person who induces two others to engage in prohibited sexual conduct while not an active participant themselves.

When we give the term "any person" its natural meaning, however, we have a statute which allows for federal prosecutions of anyone who uses any form of communication (a 'means') to persuade, induce, entice, or coerce a minor into any sexual activity for which any person can be charged with an offense, regardless of who they are, if they're minors themselves, if they're even involved in the case, or even if they are in the same jurisdiction. If a 17 year-old girl and an 18 year-old boy arrange to engage in sexual intercourse — a sexual activity which is entirely lawful for them in Florida — a person in Oregon can still be charged with sexual abuse in the third degree for that same act, making it a Class A misdemeanor under Oregon Revised Statute §163.415, or contributing to the sexual delinquency of a minor under Oregon Revised Statute §163.435. "A person in Oregon" thus qualifies as "any person", who could "be charged with a criminal offense," for the lawful sexual intercourse with a person under 18 in the State of Florida, and their sexual activity thus subjects them to federal prosecution. The boy (who is 18) has used some form of communication (a 'means' of interstate commerce) to persuade, induce, or entice a 17 year-old girl (who has not yet 'attained the age of 18 years') to engage in sexual intercourse (a sexual activity) for which 'any person'—(someone in Oregon)— can be charged with a criminal offense.

"Any" sexual activity, for which "any" person can be charged with an offense, is not limited in any way by the text of the statute. It was written to allow the law from one jurisdiction to be used as the basis for federal prosecution of someone who may reside in another, and it applies to everyone, regardless of whether or not they are within the same state as the actual physical offense. That a person in Oregon could be charged with a criminal offense for the sexual activity of sexual intercourse with a 17 year-old girl clearly satisfies the plain terms "any sexual activity for which any person can be charged with a crime..." 18 U.S.C. §2422(b) (emphasis added).

Unless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning." Estate of Cowart, v. Nicklos Drilling Co., 505 U.S. 469, 475, 112 S.Ct. 2589 (1992). We must give effect to the plain terms of §2422(b), and without any basis in the text for doing so, we cannot read any limitation into the statute, or its word "any". See Gonzales, supra, 520 U.S. at 5, 117 S.Ct. 1032.

The Defendant argues that since there is no basis for limiting the reach of the term "any sexual activity for which any person can be charged with a criminal offense", it is not readily susceptible to any more limited construction, and that as long as someone, somewhere, can be charged with a criminal offense for the contemplated sexual activity, then there exists 'any person' as required by §2422(b). The Defendant submits that in light of these facts, the true effect of §2422(b) can be stated thus: "Whoever, using the mail or any type of communication, to include the human voice, knowingly persuades, induces, entices, or coerces anyone under 18 to engage in prostitution or any sexual activity which is a violation of the law for somebody, somewhere, or attempts to do so, shall be fined under this title and imprisoned for not less than 10 years or for life."

As long as a criminal statute which prohibits the sexual activity exists, somebody can be charged with a criminal offense. If two minors, or a minor and someone who is over 18, arrange to engage in sexual activity, even if it is lawful to do so in their jurisdiction, Oregon Revised Statutes §163.415 and §163.435 still makes that

a criminal offense, and one or both of them run afoul of 18 U.S.C. §2422(b).

Even if the government tried to raise an objection that the statute requires a person to know the sexual activity is unlawful before they could be prosecuted, this would not save §2422(b). It is common knowledge that several states have criminal offenses for engaging in sexual activities with anyone under the age of 18. Everyone knows that the states have differing ages at which a person may lawfully consent to sex, and as long as they know that any person, even one in another state, could be charged for their conduct, they will always be liable to prosecution.

§2422(b) is not easily susceptible to a more limited construction. Congress repeatedly used the word "any" without any qualification and the Supreme Court has held "any" to be expansive. The term "any person" is only associated with the similarly expansive "any sexual activity", and this supports the broader reading as well. As a consequence of its plain terms, any time anyone persuades, induces, entices, or coerces a minor into sexual activity, even when minors themselves, they know that someone, somewhere in the United States could be charged with a criminal offense for any sexual contact with a minor, and they can be found guilty of violating §2422(b) every time. This is true whether or not the conduct is locally permissible, and so long as a statute like Oregon's misdemeanor exists, §2422(b) makes all sexual activity or intercourse with a person under 18 a federal felony. This plainly makes 'a substantial number of its applications' unconstitutional, "judged in relation to its plainly legitimate sweep," United States v. Stevens, 559 U.S. 460, 473, 130 S.Ct. 1577, and therefore facially overbroad, violating the First Amendment.

Any attempt to read the term "any sexual activity for which any person can be charged with a criminal offense" more narrowly requires not just reinterpretation, but rewriting. There is simply no adequate reading of §2422(b) which would result in it only applying to a smaller, discreet group of offenses. Of course, "every reasonable construction must be resorted to, in order to save the statute

from unconstitutionality." *United States v. Williams*, 553 U.S. 285, 294, 128 S.Ct. 1847. However, "the maxim that statutes should be construed to avoid constitutional questions offers no assistance here. This "'cardinal principle' of statutory construction... is appropriate only when [an alternative interpretation] is 'fairly possible' from the language of the statute."" *United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 2203 (1979) (quoting *Swain v. Pressley*, 430 U.S. 372, 378, n. 11, 97 S.Ct. 1224 (1977)).

"[A]nalysis must begin with the language of the statute itself; when the statute is clear, 'judicial inquiry into [its] meaning, in all but the most extraordinary circumstances, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589 (1992). And "where, as here, the statute's language is clear, the sole function of the court is to enforce it according to its terms." *West Virginia University Hospitals, Inc., v. Casey*, 499 U.S. 33, 99, 111 S.Ct. 1138 (1991). We cannot pretend that the meaning of the word "any" is unclear, nor can we read into it a limitation for which there is no basis in the text of the statute. We are forced to decide if, as it stands, the statute is overbroad. That prosecutors use §2422(b) to target only specific types of individuals, and not every single minor-involved sex case, is of no importance here. Regardless of any exercise of prosecutorial discretion, "the First Amendment protects against Government; it does not leave us at the mercy of *nobless oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480, 130 S.Ct. 1577 (2010). Cf. *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 473, 121 S.Ct. 903 (2001).

"We will not rewrite a... law to conform it to constitutional requirements, for to do so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Stevens*, 559 U.S. at 481, 130 S.Ct. 1577. §2422(b)'s clear terms make otherwise entirely lawful conduct with consenting partners under the age of 18 in dozens of a violation of federal law. Anyone hoping to abide by its terms has only one option:

refrain from any kind of speech or communication with anyone under 18 which could possibly be considered an attempt to persuade, induce, entice, or coerce that minor into engaging in any sexual activity whatsoever. This criminalizes a vast area of otherwise protected speech between minors, and between minors who are legally able to consent to sex before 18 and their partners, and makes the majority of its potential applications unconstitutional, judged in relation to its plainly legitimate sweep.

Finally, the Defendant argues that, even in those cases where a prosecutor tries to utilize "the mail", "any facility... of interstate or foreign commerce," or the element of being "within the special maritime and territorial jurisdiction of the United States," §2422(b)'s secondary element of "engaging in... any sexual activity for which any person can be charged with a criminal offense," would still be unconstitutional under the First Amendment overbreadth analysis, and therefore the statute remains a violation of the First Amendment.


## B. Ground Two

Ground Two of the Defendant's §2255 motion is that the phrase "... any sexual activity for which any person can be charged with a criminal offense..." in 18 U.S.C. §2422(b) is unconstitutionally vague. For the same reasons put forth in section A., Ground One of this brief, the Defendant believes that there is no proper limitation to the statute's reach in the text, and therefore no way to discern whether local laws are superior or subordinate to a conflicting law, no way to tell what jurisdiction a person is subject to, or what happens when two competing laws apply simultaneously. Not only does this leave a person of ordinary intelligence to guess at its meaning, but it also allows for arbitrary enforcement, since it allows prosecutors and law enforcement officers to pick and choose from different laws and different jurisdictions in deciding how to enforce this law and how to prosecute offenders.

18 U.S.C. §2422(b) has been analyzed by this court in a vagueness context before. In *United States v. Panfil*, 338 F.3d 1299, 1301 (11th Cir. 2003), the court ruled

Panfil's vagueness challenge was meritless because the words "any sexual activity for which any person can be charged with a criminal offense" have plain and ordinary meanings. The Defendant, however, points out that just because the words themselves have plain and ordinary meaning, that does *not* mean that their *effect* is clearly defined. Based on this distinction, the Defendant argues that it is the *effect* that this phrase has which renders it vague and unclear, not the meaning of the individual words themselves. The clarity of the *individual words* has been settled by this court, and precedent forecloses that particular argument, but the actual *effect* of that phrase has not yet been subject to scrutiny by the 11th Circuit. Therefore, the Defendant's argument appears to be one of first impression for this court, and it is this specific argument he wishes to have considered, not that already foreclosed by *Panfil*.

### C. Ground Four

In Ground Four of his motion, the Defendant claims that 18 U.S.C. §2422(b) was void *ab initio*, and that the District Court lacked the subject matter jurisdiction to impose a conviction and sentence. This is based in large part on the argument that §2422(b) is not truly a regulation of the internet, or any other channel or instrumentality of interstate commerce, and it is thus beyond Congress's power to enact, following the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624 (1995), regarding the Commerce Clause authority. Because this argument is a central theme in the Defendant's motion, and as it is echoed in several of the Defendant's other grounds for relief, the issue is discussed in more detail here, and he prays that the Court will keep this argument in mind while considering the rest of those grounds.

For years the 11th Circuit has repeatedly held that §2422(b) is a constitutional exercise of Congress's power to regulate pursuant to the Commerce Clause. U.S. Const., Art. 1, §8, cl. 3. The Court justifies this by using the often-quoted holding made

popular by *United States v. Hornaday*, 392 F.3d 1306, and its progeny, that "the internet is an instrumentality of interstate commerce," *id.*, at 1311, "Congress has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact." *Ibid.* The *Hornaday* court also said that "Congress may reach and prohibit the use of a telephone or the internet to set up the sexual abuse of children through intermediaries." *Ibid.*

*Hornaday* is now a mainstay of those defending §2422(b) from Commerce Clause challenges, and the courts parrot these lines faithfully in their rulings. Unfortunately, they do this in error, thanks to two critical misconceptions: First, Hornaday never challenged Congress's power to regulate the internet. Hornaday's challenge was based on a claim that Congress lacked the authority to criminalize the use of a facility of interstate commerce to seek out child victims *unless there is direct communication with the minor.* See *Hornaday*, *id.*, at 1311 (referring to Appellant's Br. at 40, "Finally, the Commerce Clause also requires that the statutory language be read to criminalize *only* direct communications between the defendant and the minor *via* the facility of interstate commerce (here, the internet).") (emphasis in original). The 11th Circuit ruled that "There is no basis for that position." *Ibid.* The use of the internet was incidental to his argument as to use of an intermediary to sustain a conviction. There was no specific ruling on Congress's authority to regulate a 'facility' of interstate commerce, in general.

Second, and more importantly a closer look at these well-known statements by the *Hornaday* court reveal that they have nothing whatsoever to do with §2422(b). These comments by the court are simply statements of fact, and do not address anything in the text of §2422(b), which by its plain terms mentions neither the internet or the instrumentalities and channels of interstate commerce. Nor are they findings of fact and conclusions of law. To say that these statements result in a finding by the court that §2422(b) is actually a regulation of the

internet is pure sophistry. §2422(b) does not, by its plain terms even specifically address interstate activities, or infer that it contemplates any type of interstate movement at all. Instead, the statute uses an entirely different jurisdictional element; that of "any facility or means of interstate or foreign commerce." 18 U.S.C. 2422(b).

Over the past decade, the 11th Circuit has maintained the fiction that §2422(b) is an internet regulation, repeatedly failing to examine the actual wording of the text. It is these specific terms which control §2422(b) and determine if it is a constitutional exercise of the Commerce Clause, not the plainly erroneous application of the words "instrumentality" or "internet". There is no basis in the text of the statute for using either of these two standards of law when examining §2422(b).

§2422(b) uses three distinctly different 'jurisdictional hooks: The mail, any facility or means of interstate or foreign commerce, and any commission of the substantive offense within the special maritime and territorial jurisdiction of the United States. Only the mail constitutes a channel of interstate commerce. 'Any facility or means of interstate or foreign commerce' is much more vast than just 'the internet', and a thing can be a 'facility or means' without also being an instrumentality of interstate commerce. The last of the three judicial hooks has no connection to commerce whatsoever.

The Defendant was prosecuted for using a 'facility or means' of interstate commerce, and that is neither an instrumentality or a channel of interstate commerce. While it is true that several different instrumentalities of interstate commerce, such as the internet and phones, fall under the umbrella of these much broader categories, the fact remains that it is those very specific categories of things which serve as the judie jurisdictional elements for §2422(b), and the fact that a single article encompassed by that larger category just happens to be an instrumentality does not mean that Congress has the authority to regulate the larger category itself.

The question now becomes, in the wake of *United States v. Lopez,* whether Congress may legitimately use the Commerce Clause power to regulate under the categories of things which are only "facilities" or "means" of interstate commerce, even when not being used for a commercial purpose, and when they need not be a channel or instrumentality of interstate commerce at all to function. The Defendant argues that this is beyond Congress's power under the Commerce Clause, and that the 'any facility or means of *the* interstate commerce' element was null and void from the moment it was created. By virtue of the law being unconstitutional, the United States District Court lacked jurisdiction to impose both conviction and sentence.

In reviewing a constitutional challenge to a statute based on the Commerce Clause, we are guided by the Supreme Court's holdings in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624 (1995) and *United States v. Morrison,* 529 U.S. 589, 120 S.Ct. 1740 (2000). Pursuant to *Lopez,* the Supreme Court ruled that Congress may regulate three broad categories under the Commerce Clause power: (i) Congress may regulate the channels of interstate commerce; (ii) Congress may regulate the instrumentalities of interstate commerce; and (iii) Congress may reach those activities which substantially effect interstate commerce. *Lopez, id.,* at 558-559, 115 S.Ct. 1624. See also *Morrison, id.,* at 608-609, 120 S.Ct. 1740 (reiterating these categories).

§2422(b) does not regulate the channels or the instrumentalities of interstate commerce. Indeed, the statute functions entirely without them, and neither is even mentioned by the plain text. The actual text of the statute turns upon the use of "any facility or means of interstate... commerce," and we "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-254, 112 S.Ct. 1146 (1992). Therefore we must assume that Congress specifically intended to criminalize the persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity using only the categories of "facilities" and "means" as

the jurisdictional element. As the statute obviously does not regulate under the Lopez (i) and (ii) powers, if it is to survive at all it must be under category (iii), those activities which substantially affect interstate commerce.

The Court in Morrison established what is now considered the controlling four-factor test for determining whether a regulated activity "substantially affects" interstate commerce. The four determinative considerations are: 1) whether the statute in question regulates commerce, "or any sort of economic enterprise"; 2) whether or not the statute contains any "express jurisdictional element which might limit its reach to a discreet set" of cases; 3) whether the statute or its legislative history contains "express congressional findings" that the regulated activity affects interstate commerce; and 4) whether the link between the regulated activity and a substantial effect on interstate commerce is "attenuated". Morrison, 529 U.S. 598, 610-612, 120 S.Ct. 1740.

The activity in question is the persuasion, inducement, enticement, or coercion of a minor into engaging in any sexual activity for which any person can be charged with a criminal offense. It has been argued in other courts outside the 11th Circuit that §2422(b) is not a regulation of this, but of the use of the facility or means of interstate commerce. That argument is easily defeated, however, by the simple fact that the statute still continues to function without the use of the mail or any facility or means' of interstate commerce at all. The title of 18 U.S.C. §2422 is "Coercion and Enticement", not 'unlawful use of the mail or facilities or means of interstate commerce. And lastly, the substantive offense can be described as "used any form of communication to persuade, induce, entice, or coerce..." due to the human voice being a more than satisfactory "means" of interstate commerce. It is absurd to imagine that the statute regulates the human voice instead of the activity of persuading, inducing, enticing, or coercing.

Having thus determined the activity at issue, we turn again to the Morrison test. In doing so we find that: 1) the persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity is not in any way 'commerce' or any sort of

economic enterprise; 2) because of the vast number of things which can satisfy §2422(b)'s jurisdictional elements "any facility or means of interstate... commerce," and the fact that every single form of communication can be a "means", the jurisdictional element in §2422(b) does not "limit its reach to a discreet set" of cases; 3) the statute's legislative history does not contain "express congressional findings" that the persuasion, inducement, enticement, or coercion of minors into engaging in unlawful sexual activity affects interstate commerce, and any such findings would have no choice but to rest on the "cost of crime" analysis already rejected by the Supreme Court; and 4) the link between the regulated activity and a substantial effect on commerce is exceedingly attenuated, due to the literal impossibility of an 'attempt' to persuade, induce, entice, or coerce a minor having any effect at all on interstate commerce. Even a 'completed' offense has no effect on interstate commerce, and to imagine one would require the use of the now-rejected "cost of crime analysis" rejected by the Supreme Court in Lopez.

Having utterly failed the four-factor Morrison test, §2422(b) has failed to substantially affect interstate commerce, and thus cannot be found constitutional under the Commerce Clause pursuant to Lopez. Furthermore, being unconstitutional from its enactment in the Telecommunications Act of 1996, §2422(b) cannot trigger the Court's jurisdiction pursuant to 18 U.S.C. §3231, and the District Court lacked the authority to impose the conviction and sentence on the Defendant.

### D. Ground Eight

In Ground Eight of the Defendant's §2255 motion he asserts that the jurisdictional element of §2422(b), "any facility or means of interstate or foreign commerce" is unconstitutionally vague. For the reasons already set forth in sections A. and C., the Defendant argues that the term "any facility or means" of interstate commerce could be nearly anything, including the human voice. A person of ordinary intelligence, however, knows that the Government can't legally regulate everything, and will therefore have to guess at what the statute covers the use of, and will differ as to its application.

## III. Conclusion

Pursuant to the binding precedent on this Court and the arguments and facts set forth in this brief, and the motion pursuant to 28 U.S.C. §2255, the Defendant has proved that he has ample grounds to succeed on the merits of his motion and obtain relief by having his conviction and sentence vacated and being released from federal custody. He has presented facts and arguments which cannot be countered or defeated by objections from the United States of America and necessitate relief. Accordingly, the Defendant, Jonathan Prive, respectfully requests this Court grant his motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255.

Respectfully submitted,

Jonathan Prive
#337795
Brevard County Jail Complex
860 Camp Road
Cocoa, FL 32927

# CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify under penalty of perjury, that I have, on this day, placed a true and correct copy of the foregoing BRIEF IN SUPPORT OF MOTION in the Brevard County Jail's internal mailing system, clearly marked "LEGAL MAIL" on the envelope, to be sent to the following parties:

(1) United States District Court
    Office of the Clerk
    United States Courthouse
    401 W. Central Blvd., suite 1200
    Orlando, FL 32801

(2) The U.S. Attorney's Office
    400 W. Washington St., suite 3100
    Orlando, FL 32801

Signed: _____ On this, the 10th day of August, 2017
        Jonathan T. Prive

# SWORN STATEMENT

I, Jonathan Prive, do hereby swear, under penalty of perjury, that the facts and statements contained in the foregoing BRIEF IN SUPPORT OF MOTION are true and correct to the best of my knowledge and understanding.

Executed on this, the 10th day of August, 2017.
Signed: _____

Jonathan T. Prive.