# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JONATHAN TYLER PRIVE,

        Petitioner,

v.

                                   Case No: 6:17-cv-1498-JA-DCI
                                      (6:14-cr-33-JA-DCI)

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

This cause is before the Court on the Amended Motion to Vacate, Set Aside, or Correct Sentence ("Amended Motion to Vacate," Doc. 34) filed by Petitioner pursuant to 28 U.S.C. § 2255. The Government filed a Response in Opposition to the Amended Motion to Vacate ("Response," Doc. 47) and a Supplemental Response in Opposition to the Amended Motion to Vacate ("Supplemental Response," Doc. 53) in compliance with this Court's instructions and with the *Rules Governing Section 2255 Proceedings for the United States District Courts*. Petitioner filed a Reply (Doc. 64) to the Responses. For the following reasons, the Court concludes that Petitioner is not entitled to relief on his claims.

## I.   PROCEDURAL BACKGROUND

A Grand Jury charged Petitioner by Indictment with one count of enticement of a minor (Count One) and one count of attempted enticement of a minor (Count Two). (Criminal Case No. 6:14-cr-33-JA-DCI, Doc. 1).[1] Petitioner entered into a Plea Agreement (Criminal Case Doc. 27) in which he agreed to enter a guilty plea to Count Two of the Indictment. Petitioner entered his plea before Magistrate Judge Karla R. Spaulding, who filed a Report and Recommendation Concerning Plea of Guilty (Criminal Case Doc. 31) recommending that the Plea Agreement and the guilty plea be accepted and that Petitioner be adjudged guilty and have sentence imposed accordingly.

The Court entered an Acceptance of Plea of Guilty and Adjudication of Guilt (Criminal Case Doc. 36) in which the guilty plea was accepted and Petitioner was adjudicated guilty of the offense. The Court then entered a Judgment in a Criminal Case (Criminal Case Doc. 98) in which Petitioner was sentenced to imprisonment for a term of 365 months, to be followed by supervised release for a total term of life. The Eleventh Circuit Court of Appeals ("Eleventh Circuit") affirmed Petitioner's conviction and sentence. (Criminal Case Doc. 122).

---

[1] Criminal Case No. 6:14-cr-33-JA-DCI will be referred to as "Criminal Case."

2

The Court previously dismissed this case without prejudice for failure to comply with prior Orders of the Court. (Doc. 15). However, the Eleventh Circuit entered a written, unpublished opinion finding that, although the case was dismissed without prejudice, the Court's "ruling barred Prive from obtaining review of his sentence because the one-year period of limitation, 28 U.S.C. § 2255(f), expired while his motion was pending." (Doc. 21 at 4). According to the Eleventh Circuit, the dismissal "operated as a dismissal with prejudice." (*Id.*). As a result, the Eleventh Circuit vacated the dismissal of the Motion to Vacate and remanded for further proceedings. (*Id.* at 5).

## II.   LEGAL STANDARDS

### A.   Relief Under Section 2255

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). "A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) (citation and quotation omitted). However, "a defendant must support his allegations with at least a proffer of some credible supporting evidence." *United States v. Marsh*, 548 F. Supp. 2d 1295, 1301 (N.D. Fla. 2008). The Court "is not required to grant a petitioner an evidentiary hearing if the § 2255 motion and the files and records of the case

3

conclusively show that the prisoner is entitled to no relief." *Rosin*, 786 F.3d at 877 (citation and quotation omitted).

## B.    Standard for Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689.

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." A defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

4

Further, a defendant's knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings. *Duhart v. United States*, 556 F. App'x 897, 898 (11th Cir. 2014). However, a defendant can still maintain an attack on the voluntary and knowing nature of the guilty plea itself. Such an attack can be based upon ineffective assistance of counsel claims that go to the knowing and voluntary nature of the plea. *Id.*

### III.   ANALYSIS

### A.   Claims One through Four

The Indictment charged Petitioner in Counts One and Two with violating 18 U.S.C § 2422(b).[1] (Criminal Case, Doc. 1). Petitioner argues that § 2422(b) is unconstitutional based on the following: (1) "it is overly broad as written, sweeping within its scope a substantial amount of protected speech" (Claim One); (2) "[t]he phrase 'any sexual activity for which any person can be charged with an offense' is overly broad and unconstitutionally vague" (Claim

---

[1] Section 2422(b) provides as follows:

(b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

Two); (3) "[t]he jurisdictional element of 18 U.S.C. § 2422(b) 'using . . . any facility or means of interstate or foreign commerce' is unconstitutionally vague, violating due process" (Claim Three); and (4) it "exceeds Congress's Commerce Clause authority and violates the Tenth Amendment to the U.S. Constitution" (Claim Four). (Doc. 34 at 6-10).

Petitioner was initially represented by Jose Rodriguez, who appeared at the Change of Plea Hearing. Rodriguez was subsequently relieved of his appointment to represent Petitioner, and Daniel Brodersen was appointed to represent Petitioner. (Criminal Case, Doc. 44). Brodersen represented Petitioner at sentencing and on direct appeal.

On direct appeal, Brodersen submitted an initial appellate brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).[2] Brodersen raised one issue: whether Petitioner's guilty plea was knowing and voluntary. (Doc. 53-1 at 7). Petitioner then submitted an initial appellate brief *pro se*. (*Id.* at 19-64).

---

[2] "[I]f [appellate] counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* at 744. A copy of appellate counsel's brief should be furnished to the defendant and time allowed for the defendant to raise any points that he or she chooses. The appellate court "then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Id.*

Petitioner's *pro se* initial appellate brief challenged the constitutionality of § 2422(b) and raised most of the arguments contained in Claims One through Four . (*Id.* at 29-33, 50-55). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation omitted) (quotation omitted); *see also United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2000) (claims raised and decided on direct appeal cannot be relitigated in a section 2255 motion). "[A] section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996) (citation omitted) (quotation omitted). Hence, those issues that were raised and considered on direct appeal cannot be relitigated in a section 2255 motion. Petitioner fails to set forth any grounds that demonstrates the necessity for reconsideration of Claims One through Four.[3] Claims One through Four are denied.[4]

## B.    Claim Five

---

[3] As to those portions of Claims One through Four that were not specifically raised on direct appeal, they are procedurally barred. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) ("Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding"); *see also McKay v. United* States, 657 F.3d 1190, 1196 (11th Cir. 2011) (explaining that a defendant must advance an available challenge to a criminal conviction on direct appeal or he is barred from presenting the claim in a section 2255 proceeding). Petitioner has not demonstrated cause or prejudice with regard to his failure to raise these matters on direct appeal.

Petitioner states that "[e]xculpatory evidence tending to prove [his] innocence was withheld from the defense during the District Court proceedings, violating [his] right to due process." (Doc. 34-1 at 19). Petitioner alleges that the Government failed to turn over certain e-mails from "the AOL warrant," which contained evidence that Petitioner "could not have had the requisite knowledge or intent required for a conviction . . . ." (*Id.* at 20-21).

This claim was raised in Petitioner's *pro se* initial appellate brief. (Doc. 53-1 at 36-40). Petitioner fails to set forth any grounds that demonstrates the necessity for reconsideration of Claim Five. Claim Five is denied.

## C.    Claim Six

Petitioner states that the prosecution "knowingly utilized perjured statements and fabricated evidence . . . ." (Doc. 34-1 at 7). This claim was not raised on direct appeal.

As noted earlier, "an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). "When a defendant fails to pursue an available

---

4 Further, Claims One through Four are without merit. The Eleventh Circuit has determined that § 2422(b) is constitutional. *United States v. Rojas*, 145 F. App'x 647, 649 (11th Cir. 2005).

8

claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error." *Id.* Alternatively, under the fundamental miscarriage of justice exception, when a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant relief in the absence of a showing of cause for the procedural default. *Id.*

In the present case, Petitioner has not alleged or otherwise demonstrated cause or prejudice with regard to his failure to raise this claim on direct appeal. Likewise, Petitioner has neither alleged nor shown the applicability of the fundamental miscarriage of justice exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, Petitioner's failure to raise Claim Six on direct appeal constitutes a waiver and bars him from raising this claim in the instant proceeding. Claim Six is denied.

### D.   Claim Seven

Petitioner states that he "did not receive fair and unbiased treatment from the district judge, denying him due process under the Fifth Amendment." (Doc. 34-1 at 9). Petitioner mentions that the Court denied his "motion to terminate the proceedings and vacate his conviction under Fed. R. Crim. P. 12(b)(3)(B)"; that, during an evidentiary hearing on his motion to withdraw his

plea, his counsel "was not allowed to question his previous attorney about his performance . . ."; and that the Court indicated that Petitioner's "sentence would have been the same even if all of Prive's objections to the proposed guidelines score had been sustained because of his personal view of the facts . . . ." (*Id.* at 9-10).

Claim Seven was raised in Petitioner's *pro se* initial appellate brief. (Doc. 53-1 at 33-36, 41-43). Petitioner has failed to set forth any grounds that demonstrate the necessity for reconsideration of Claim Seven.[5] Claim Seven is denied.

### E.    Claim Eight

Petitioner states that Rodriguez was ineffective based on the following: (1) Rodriguez refused to file any additional demands or motions for discovery; (2) Rodriguez "lied to [Petitioner] during his representation to him of the legal options in his case"; (3) after Petitioner discovered a portion of the missing e-mail evidence in the draft plea agreement, "Rodriguez lied and told him it couldn't be used as evidence in court"; (4) Rodriguez was absent for several months dealing with a family health crisis, "during which time he admits he

---

[5] As to those portions of Claim Seven that were not specifically raised on direct appeal, they are procedurally barred. Petitioner has not demonstrated cause or prejudice with regard to his failure to raise these matters on direct appeal.

essentially did not work on any cases"; (5) Rodriguez "fell asleep during [their review of discovery], allowing [Petitioner] to view the discovery without any input or advice"; (6) Rodriguez "performed no investigation into the discovery materials" and "barely looked at any of the discovery due to his interest in seeing [Petitioner] sign the plea agreement before the change of plea hearing"; (7) Rodriguez "barely looked at any of the discovery" and failed to reveal that the search warrants were illegally executed; (8) because of Rodriguez' failure to investigate, Petitioner did not know that an agent investigating the case "fabricated multiple search warrant returns in order to hide the illegal execution of those warrants"; (9) Rodriguez did not inform Petitioner that the search warrant was illegally executed; (10) "Rodriguez lied to [Petitioner] and told him that Michael Glascock would identify him as the suspect in the crime charged if the case went to court"; (11) "Rodriguez lied to [Petitioner] and told him he would retain his right to appeal"; (12) "Rodriguez perjured himself during his testimony on January 22, 2015"; (13) "Rodriguez told [Petitioner] that he'd never tried any cases of this type before"; (14) "Rodriguez lied and told [Petitioner] he could not challenge the use of DHS agents as surveillance assets in a State-run sting operation"; (15) "Rodriguez lied to [Petitioner] and told him that he would not receive a fair trial in Florida"; and (16) "Rodriguez never denied having told [Petitioner] that he could not challenge anything done

11

by federal/state taskforce members on the basis of the immunity." (Doc. 34-1 at 10-13).

>    1.    *Issues One, Four, Five, and Six*

Petitioner alleges in these issues as follows: Rodriguez refused to file any additional demands or motions for discovery (Issue One); Rodriguez was absent for several months dealing with a family health crisis, "during which time he admits he essentially did not work on any cases" (Issue Four); Rodriguez "fell asleep during [their review of discovery], allowing [Petitioner] to view the discovery without any input or advice" (Issue Five); and Rodriguez "performed no investigation into the discovery materials" and "barely looked at any of the discovery due to his interest in seeing [Petitioner] sign the plea agreement before the change of plea hearing" (Issue Six). (Doc. 34-1 at 10-11).

These issues are without merit. First, Petitioner fails to demonstrate that additional discovery existed.[6] "[A] habeas petitioner may not leave a court to speculate what evidence the deficient investigation would have discovered. In order to prevail on an allegation that defense counsel conducted an insufficient investigation resulting in ineffective assistance, the petitioner must show specifically what that investigation would have produced." *Reel v.*

---

[6] Moreover, Rodriguez submitted an affidavit stating that he reviewed discovery with Petitioner on multiple occasions. (Doc. 47-1 at 3-5).

*Ryan*, No. CV 12-8084-PCT-JAT, 2013 WL 2284988, at *19 (D. Ariz. May 22, 2013). Here, Petitioner has not shown what discovery would have been produced from further investigation.

Next, even if additional discovery existed, Petitioner has not shown that "the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 370. In fact, Petitioner has not shown that the additional discovery would have been in any manner beneficial to his case. The Court is unconvinced that further investigation by Rodriguez would have altered Petitioner's decision to plead guilty. The facts Petitioner would have discovered through additional investigation are unknown and therefore too speculative to show a reasonable probability of a different result. *See Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable."). Petitioner points to nothing that he contends competent counsel should have discovered that would have materially enhanced his prospects at trial.

Finally, Petitioner's allegation that Rodriguez did not meaningfully participate in reviewing the discovery is too vague and conclusory to demonstrate deficient performance of prejudice.

Petitioner's allegations do not demonstrate that his counsel failed to adequately prepare for and investigate his case. More importantly, Petitioner

13

fails to establish that he was prejudiced by counsel's actions in this regard. *See Strickland*, 466 U.S. at 687–89. Therefore, he is not entitled to relief based on these claims of ineffective assistance of counsel in Issues One, Four, Five, and Six.

2.    *Issues Two, Seven, Eight, Nine, Fourteen, and Sixteen*

Petitioner alleges in these issues as follows: Rodriguez "lied to [Petitioner] during his representation to him of the legal options in his case" (Issue Two); Rodriguez "barely looked at any of the discovery" and failed to reveal that the search warrants were illegally executed (Issue Seven); because of Rodriguez' failure to investigate, Petitioner did not know that an agent investigating the case "fabricated multiple search warrant returns in order to hide the illegal execution of those warrants" (Issue Eight); Rodriguez did not inform Petitioner that the search warrant was illegally executed (Issue Nine); "Rodriguez lied and told [Petitioner] he could not challenge the use of DHS agents as surveillance assets in a State-run sting operation" (Issue Fourteen); and "Rodriguez never denied having told [Petitioner] that he could not challenge anything done by federal/state taskforce members on the basis of the immunity" (Issue Sixteen). (Doc. 34-1 at 11-13).

These issues involve Petitioner's contention that the search warrants were illegally executed and that Rodriguez should have raised "issues of

14

violations of Florida laws" and argued that the search warrants were invalid (Doc. 34-1 at 11-12). He mentions that "Agent Spadafora of the Brevard County Sheriff's Office (BCSO) had fabricated multiple search warrant returns in order to hide the illegal execution of those warrants." (*Id.* at 11-12). Additionally, according to Petitioner, the search warrant for his home was "facially invalid" and illegally executed "because evidence was seized under a state search warrant for the prosecution of state crimes." (*Id.* at 12). He also states that Rodriguez falsely told him that "he could not challenge the use of DHS agents as surveillance assets in a State-run sting operation" and that "he could not challenge anything done by federal/state taskforce members on the basis of their immunity from the laws of Florida." (*Id.* at 12-13).

Aside from conclusory allegations, Petitioner fails to produce any evidence, or otherwise demonstrate, that the search warrants were invalid or illegal. To the extent Petitioner argues that Rodriguez should have raised issues of state law violation, "federal law, not state law, governs the admissibility of evidence in federal court, and complaints that the evidence was obtained in violation of state law are of no effect." *United States v. Noriega*, 676 F.3d 1252, 1263 n.4 (11th Cir. 2012) (quotation omitted) (citation omitted).

Moreover, even if the evidence obtained from the warrants would have been in some manner inadmissible, this same evidence was obtained from

Michael Glascock's electronic devices and e-mail accounts with his consent.[7]

(Criminal Case Doc. 82 at 5; Doc. 27 at 18). In fact,

> Glascock was cooperative with agents and provided agents access
> to his e-mail accounts. A review of Glascock's electronic devices
> and e-mail accounts revealed communication between Glascock
> and Prive, using their respective email accounts. The e-mails
> detailed their prior sexual abuse of Glascock's daughter, the minor
> victim, and also outlined their plans to continue the sexual abuse
> of the minor victim, in the near future.

(Criminal Case Doc. 82 at 5). Petitioner has not alleged that the evidence

derived from Glascock was objectionable, and it does not appear that he would

have standing to do so. Thus, even if the evidence from the search warrants in

Petitioner's case were inadmissible, the same evidence was available from

other, unchallenged sources.

The Court finds that Rodriguez's performance was not deficient with

regard to the allegations in Issues Two, Seven, Eight, Nine, Fourteen, and

Sixteen. Likewise, Petitioner has failed to demonstrate prejudice.

Consequently, Issues Two, Seven, Eight, Nine, Fourteen, and Sixteen are

denied.

---

[7] Petitioner and Glascock participated in the sexual abuse of the minor victim
at Glascock's home. (Criminal Case Doc. 82 at 4). The minor victim in this case was
Glascock's daughter. (*Id.*). Glascock pleaded guilty to production of child pornography
and attempted enticement of a minor and was sentenced to life imprisonment. (*Id.* at
2).

### 3.   Issues Three, Twelve, and Thirteen

Petitioner alleges in these issues as follows: after Petitioner discovered a portion of the missing e-mail evidence in the draft plea agreement, "Rodriguez lied and told him it couldn't be used as evidence in court" (Issue Three); "Rodriguez perjured himself during his testimony on January 22, 2015" (Issue Twelve); and "Rodriguez told [Petitioner] that he'd never tried any cases of this type before" (Issue Thirteen). (Doc. 34-1 at 11-12).

Issue Three fails to specify how counsel's statement about the missing e-mail was erroneous or how the "missing e-mail evidence" would have benefitted his case. Petitioner has not shown prejudice with regard to Issue Three.

Issue Twelve involves an evidentiary hearing held on his motion to withdraw his guilty plea. (Criminal Case, Doc. 117). Petitioner alleges that Rodriguez made contradictory statements during his testimony regarding the timing of when Petitioner wanted to enter a plea. Although Rodriguez may have made contradictory statements during his testimony regarding the timing of when Petitioner wanted to enter a plea, Petitioner fails to demonstrate that Rodriguez made perjurious statements. Petitioner fails to demonstrate that Rodriguez's performance was in any manner deficient or that he sustained prejudice. Finally, Issue Thirteen fails to specify how counsel's statement about never trying this type of case was deficient or prejudicial.

17

The Court finds that, with regard to Issues Three, Twelve, and Thirteen, Petitioner fails to show that counsel's performance was deficient or that he sustained prejudice. Issues Three, Twelve, and Thirteen are denied.

### 3.    Issues Ten, Eleven, and Fifteen

Petitioner alleges in these issues as follows:   "Rodriguez lied to [Petitioner] and told him that Michael Glascock would identify him as the suspect in the crime charged if the case went to court" (Issue Ten); (11) "Rodriguez lied to [Petitioner] and told him he would retain his right to appeal" (Issue Eleven); and "Rodriguez lied to [Petitioner] and told him that he would not receive a fair trial in Florida" (Issue Fifteen). (Doc. 34-1 at 12-13).

Issue Ten is without merit. Glascock entered a plea of guilty prior to Petitioner and agreed to assist the Government in the prosecution of others. (Criminal Case No. 6:14-cr-34-Orl-28KRS, Doc. 27). It was not ineffective for Rodriguez to discuss with Petitioner the possibility that Glascock would cooperate and testify against him, particularly in light of Glascock's plea agreement.

Likewise, Issue Eleven lacks merit. The Court previously rejected this argument after a hearing on the issue. Specifically, the Court found that "Defendant's own statements that Mr. Rodriguez misinformed him by stating

18

that he had a right to appeal his conviction are contradicted by Defendant's statements at the plea colloquy." (Criminal Case Doc. 67 at 10).

Finally, Issue Fifteen is vague and conclusory. Petitioner fails to specify the context of the alleged statement made by Rodriguez or specifically how it affected his decision to enter a plea of guilty.

The Court finds that, with regard to Issues Ten, Eleven, and Fifteen, Petitioner fails to show that counsel's performance was deficient or that he sustained prejudice. Issues Ten, Eleven, and Fifteen are denied.

### F.    Claim Nine

Petitioner states that his plea "was not knowingly and voluntarily entered because of the intentional misrepresentations of Jose Rodriguez." (Doc. 34-1 at 13). Petitioner alleges that Rodriguez erroneously told him that "he had no available defense"; that he did not realize that he had been "stripped of his right to an appeal"; that Rodriguez erroneously told him that "nothing in the plea agreement or in a federal proceeding could be used against him in any state court or other proceeding"; and that Rodriguez never told him that "the acts in the factual basis could still be used to enhance his sentence as to Count Two." (*Id.*).

The record belies Petitioner's allegations. Petitioner signed the Plea Agreement and acknowledged that he had read it in its entirety and fully

understood the terms. Petitioner stated in the Plea Agreement that he was "pleading guilty because [he] is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached Factual Basis . . . ." (Criminal Case, Doc. 27 at 15-16). Petitioner also acknowledged in the Plea Agreement that he understood that the agreement was "limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities . . . ." (*Id.* at 14). Further, under the terms of the Plea Agreement, Petitioner "expressly waive[d] the right to appeal [his] sentence on any ground, except as to certain specified grounds." (*Id.* at 13-14). Moreover, Petitioner understood that "Count Two [was] punishable by a mandatory minimum term of imprisonment of 10 years up to life . . . ." (*Id.* at 1). Finally, Petitioner acknowledged that he was entering into the Plea Agreement "freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney without promise of benefit of any kind . . . and without threats, force, intimidation, or coercion of any kind." (*Id.* at 14).

At the Change of Plea Hearing, Petitioner informed the Court that he was pleading guilty "[b]ecause I committed the crime . . . ." (Criminal Case, Doc. 37 at 8). Petitioner described to the Court his involvement in the crime to

which he pled guilty. (*Id.* at 22-23). Petitioner also informed the Court that the factual basis set forth in the Plea Agreement was true. (*Id.* at 23-24).

Petitioner stated that he read the Plea Agreement, that he understood it, and that he had discussed it with his attorney. (*Id.* at 9). Petitioner stated that he understood the rights he was waiving with regard to filing a direct appeal and that he was willing to give up those rights. (*Id.* at 15). The Court informed Petitioner that if "convicted of the offense you face a mandatory minimum term of 10 years in jail up to the rest of your life in jail." (*Id.* at 9). Petitioner understood that the Court was unable to determine at that time what his sentencing guideline range would be and that he would not be allowed to withdraw his plea if his sentence was different from what he expected. (*Id.* at 18). He also stated that he was freely and voluntarily entering his plea. (*Id.* at 25).

Petitioner fully understood the consequences of his plea, including the sentence that could be imposed. As the Supreme Court held in *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), "the representations of the defendant [at the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."

21

Petitioner has not made a sufficient showing to refute the veracity of his responses at the plea hearing.

The record in this case reflects that Petitioner understood the charges against him, understood the consequences of his plea, and voluntarily chose to enter his plea of guilty without being misled or otherwise misinformed. Petitioner's responses throughout his plea colloquy illustrate a comprehension of the statements of the Court and counsel and therefore the record supports a finding that the plea was valid. Petitioner was not misled or misinformed as to the sentence he would receive or as to the law, and every effort was made to help Petitioner understand his rights and options. Petitioner entered into his plea of guilty voluntarily and knowingly. Claim Nine is denied.

### G.   Claim Ten

Petitioner states that Brodersen was ineffective based on the following: (1) Brodersen "never made any additional motions for discovery or tried to compel the production of the records, but instead only relied on the word of the USAO (who had already shown they did have more . . . ."; (2) Brodersen did not pursue the missing evidence consisting of "hundreds of email files," which were withheld in bad faith; (3) Brodersen failed to "press the issue" regarding the Government "withholding information not in the discovery"; (4) "Brodersen made multiple attempts to withdraw as counsel because he did not want to file

22

a motion under Fed. R. Crim. P. 12(b)(3)(B) challenging the constitutionality of 18 U.S.C. § 2422(b)"; (5) Brodersen "vacillated between agreeing to work with Prive and trying to withdraw, resulting in a finding by Judge Spaulding that" Petitioner was trying to delay sentencing; (6) Brodersen failed to file "a motion under 12(b)(3)(B)," despite telling Petitioner he would do so; (7) Brodersen did not raise certain issues on direct appeal; (8) Brodersen ignored Petitioner after April 15, 2015, and failed to provide him with records so that Petitioner could respond to the *Anders* brief; and (9) Brodersen never consulted with Petitioner prior to filing an *Anders* brief. (Doc. 34-1 at 14-15).

### 1.    *Issues One, Two, and Three*

Petitioner alleges in these issues as follows: Brodersen "never made any additional motions for discovery or tried to compel the production of the records, but instead only relied on the word of the USAO (who already showed the did have more . . . ." (Issue One); Brodersen did not pursue the missing evidence consisting of "hundreds of email files," which were withheld in bad faith (Issue Two); and failed to "press the issue" regarding the Government "withholding information not in the discovery." (Doc. 34-1 at 28).

As to the alleged missing e-mails, Petitioner has not shown how they would have been  beneficial to his case. Moreover, the factual basis of Petitioner's Plea Agreement set forth some of the e-mails exchanged between

23

Petitioner and Glascock. (Criminal Case, Doc. 27 at 18-26). Petitioner acknowledged being the user of the e-mail account. (*Id.* at 25, 27). In particular, Petitioner "admitted that he was the user of the email account regarding the sexual abuse of the victim as set forth above." (*Id.* at 25). Also, Petitioner fails to demonstrate that any additional discovery existed.

In addition, the Court previously rejected Petitioner's argument that there was a *Brady* violation in this case,[8] (Criminal Case, Doc. 67 at 10), and Petitioner has failed to demonstrate that the Government withheld discovery or evidence in this case.

Having considered Petitioner's arguments, the Court finds that, with regard to Issues One, Two, and Three, Petitioner fails to show that counsel's performance was deficient or that he sustained prejudice. Issues One, Two, and Three are denied.

### 2.   *Issues Four, Five, and Six*

Petitioner alleges in these issues as follows: "Brodersen made multiple attempts to withdraw as counsel because he did not want to file a motion under

---

[8] *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, the defendant must show that (1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not obtain it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material. *United States v. Regal*, 740 F. App'x 171, 174 (11th Cir. 2018).

Fed. R. Crim. P. 12(b)(3)(B) challenging the constitutionality of 18 U.S.C. § 2422(b)" (Issue Four); Brodersen "vacillated between agreeing to work with Prive and trying to withdraw, resulting in a finding by Judge Spaulding that" Petitioner was trying to delay sentencing (Issue Five); and Brodersen failed to file "a motion under 12(b)(3)(B)," despite telling Petitioner he would do so (Issue Six).

As discussed earlier, the Eleventh Circuit has determined that § 2422(b) is constitutional. *United States v. Rojas*, 145 F. App'x 647, 649 (11th Cir. 2005). Thus, there was no basis to challenge the constitutionality of § 2422(b). Further, there is no indication that Petitioner attempting to delay sentencing was a factor in the sentence imposed by the Court. (Criminal Case Doc. 100).

Having considered Petitioner's arguments, the Court finds that, with regard to Issues Four, Five, and Six, Petitioner has failed to show that counsel's performance was deficient or that he sustained prejudice. Issues Four, Five, and Six are denied.

### 3.    *Issues Seven, Eight, and Nine*

Petitioner alleges in these issues as follows: Brodersen did not raise certain issues on direct appeal (Issue Seven); Brodersen ignored Petitioner after April 15, 2015, and failed to provide him with records so that Petitioner

could respond to the *Anders* brief (Issue Eight); and Brodersen never consulted with Petitioner prior to filing an *Anders* brief (Issue Nine). (Doc. 34-1 at 15).

But Petitioner fails to establish ineffective assistance of counsel with regard to these issues. First, as discussed above, Brodersen filed an *Anders* brief on direct appeal. The Eleventh Circuit found that there were no arguable issues of merit: "Our independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct. Because independent examination of the entire record reveals no arguable issues of merit, counsel's motion to withdraw is **GRANTED**, and Prive's conviction and sentence are **AFFIRMED**." (Criminal Case, Doc. 122 at 2).

Next, Petitioner does not identify any potentially meritorious claim that appellate counsel overlooked. Thus, not only is Petitioner unable to demonstrate that appellate counsel provided deficient representation, he cannot show any prejudice as a result of counsel's performance. Consequently, Petitioner's vague and unsubstantiated claims of ineffective assistance of appellate counsel are insufficient to justify § 2255 relief.

Under the circumstances, the Court finds that, with regard to Issues Seven, Eight, and Nine, Petitioner fails to show that counsel's performance was deficient or that he sustained prejudice. Issues Seven, Eight, and Nine are denied.

26

Allegations not specifically addressed herein are without merit.

## IV.   CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner fails to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

## V.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.     The Amended Motion to Vacate, Set Aside, or Correct Sentence (Doc. 34) is **DENIED**.

2.     This case is **DISMISSED with prejudice**.

3.     Petitioner is **DENIED** a certificate of appealability.

4.     The Clerk of the Court is directed to enter judgment in favor of Respondent and to close this case. A copy of this Order and the judgment shall also be filed in criminal case number 6:14-cr-33-JA-DCI.

5.     The Clerk of the Court is directed to terminate any related section 2255 motion filed in criminal case number 6:14-cr-33-JA-DCI.

**DONE** and **ORDERED** in Orlando, Florida on December ___9___, 2021.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party